DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas, entered in favor of defendants-appellees, Dale and Dorothy Francis, after the court dismissed plaintiff-appellant J A, Inc.'s action, finding it was barred by the statute of limitations. Appellant's appeal raises the following assignments of error:
 {¶ 2} "First Assignment of Error: The cognovit promissory notes are subject to a 15 year statute of limitations pursuant to § 2305.06 of the ORC and not the 10 year statute of limitations of § 1303.16 of the ORC.
 {¶ 3} "Second Assignment of Error: The trial court committed reversible error when it held that a demand for payment to toll the statute of limitations to collect the balance due on the demand note had not been made.
 {¶ 4} "Third Assignment of Error: The trial court committed reversible error when it denied the enforcement of the cognovit notes when the parties had extended the time of payment."
 {¶ 5} On August 15, 1980, appellees Dale and Dorothy Francis and their son Allen Francis signed a note payable to Horn's Crop Service, Inc., appellant's predecessor in interest, for $60,000 with an annual interest rate of 15 percent (the "1980 note"). The note was secured by a mortgage on the Francises' property and was intended as a means of securing payment on accounts which appellees and their son owed to Horn's. The note reads in pertinent part: "For value received, we, the undersigned, jointly and severally promise to pay to the order of Horn's Crop Service Center, Inc., Sixty Thousand Dollars ($60,000.00) with interest at Fifteen Percent (15%) per annum. This note shall be payable to the promisee or assigns on demand. * * * All parties to this note, including indorsers, sureties and guarantors hereby severally waive presentment for payment, notice of nonpayment, protest, notice of protest and diligence in bringing suit against any party thereto, and all indorsers, guarantors, and sureties hereon agree to any extension or postponement of the time of any payment. This note is a purchase-money note secured by a security agreement executed this day. If any installment of this note is not paid when due then all installments hereof remaining unpaid shall immediately become due and payable at the option of the holder hereof, without notice or demand, said notice or demand hereby being waived."
 {¶ 6} The Francises made no payments on the 1980 note and by October 1983, they owed Horn's $120,282.97. October 31, 1983, appellees and their son signed a second note payable to Horn's Crop Service Center, Inc., for $60,282.97 with an annual interest rate of 15 percent (the "1983 note"). The 1983 note was payable on demand and was secured by the same real estate as the 1980 note. The 1983 note also contained language identical to that of the 1980 quoted above.
 {¶ 7} It is unclear what payments if any the Francises made on the notes. The last credit posted to appellees' account with Horn's was in October 1988, when Dale Francis provided hauling services to Horn's in exchange for a credit on the notes. In addition, Horn's never provided appellees with statements reflecting payments made, accumulated interest and total amounts due on the notes. Subsequently, Horn's Crop Service Center, Inc. merged with two other companies to become J A, Inc., plaintiff-appellant herein. As a result of that merger, J A, Inc. became the successor promisee and holder of the notes. J 
A, Inc., continued Horn's practice of never providing appellees with statements regarding the notes.
 {¶ 8} At some time in 1996 or 1997, appellees met with Donavon Karnehm, the comptroller of J A, Inc. to discuss their account. Dorothy Francis testified at the trial below that because they had never received a statement of their account, she and Dale wanted to know how much they owed on the notes. Subsequently, Karnehm sent appellees a detail on the notes showing a total balance due as of November 11, 1997, of $164,748.84. The detail did not specify how much was due on each note but gave a total due on the combined notes. Subsequently, Karnehm sent Dorothy Francis a letter dated December 23, 1998 which reads: "It has been a year since I sent to you the detail on the notes and mortgages due to Horns Crop Service Center, Inc. I have updated the schedule to include accrued interest through December 31, 1998. The lack of payments since 1988 has allowed the accrued interest to accumulate to over $100,000. We need to address this mater [sic] as each year we are going farther in the wrong direction. I have prepared amortization schedules for each of the three balances which make up your total indebtedness. The schedules are based on 20 years, and would require the following monthly payments starting January 31, 1998. * * * Please contact Al Lehmkuhl * * * to discuss this matter." That letter states a total due of $172,150.04, with $43,412.53 due on the "note," $105,346.16 in accrued interest, and $23,391.35 due on a trucking account.
 {¶ 9} Thereafter, in approximately February 1999, appellees, their attorney and Alfred Lehmkuhl, the owner and chief executive officer of J A, Inc., met at the offices of Aigler and Paul, appellant's legal counsel, to discuss the matter of the notes. Six months later, Karnehm sent appellees a letter dated August 2, 1999, which reads in relevant part:
 {¶ 10} "It has been six months since our meeting at the offices of `Aigler and Paul' concerning the mortgages due to Horns Crop Service Center Inc. I have updated the schedule to include accrued interest through July 31, 1999. We need to address this mater [sic] as each year we are going farther in the wrong direction. Please contact Al Lehmkuhl * * * to discuss this matter." Karnehm then sent appellees an updated schedule in a letter dated October 4, 1999. That letter reads: "Attached is an updated schedule of the note due to Horns Crop Service Center Inc. The interest which has accrued for the year 11/1/98 to 10/31/99 is $6,511.98. The total due as of October 31, 1999 is $177,573.63. Please contact Al Lehmkuhl * * * to discuss this matter."
 {¶ 11} On March 5, 2002, appellant filed a complaint in foreclosure in the court below. An amended complaint in foreclosure was filed on March 18, 2002, against Dale and Dorothy Francis and Household Realty Corporation, which also held a mortgage lien on appellees' property. Allen Francis was not named in the complaint. The complaint alleged that as of February 1, 2002, the sum of $168,847.39 was due and owing on the 1980 note and the sum of $23,391.35 was due and owing on the 1983 note. In their answer and counterclaim, appellees asserted in pertinent part that the statute of limitations had run on the notes and mortgages and that appellant or its predecessors had failed to render a proper accounting of appellees' payments.
 {¶ 12} The case proceeded to a trial to the court on December 17, 2002, at which Dorothy Francis, Dale Francis, Donavon Karnehm, Alfred Lehmkuhl, and Charles Norton, the comptroller of Horn's from 1983 until 1991, testified to the facts as set forth above. At the conclusion of appellant's case, appellees moved for a dismissal on the ground that no demand for payment had been made within ten years of the last payment and, as such, the statute of limitations had run on appellant's claim. The trial court agreed and held that pursuant to R.C. 1303.16(B), appellant's claim was time barred.
 {¶ 13} On January 6, 2003, the lower court issued findings of fact, conclusions of law and a judgment entry dismissing appellant's complaint and canceling the notes and mortgages. In pertinent part, the court found that at no time did representatives of appellant demand payment on the notes from appellees. Accordingly, the court concluded that appellant's claims were time barred by R.C. 1303.16(B), which sets forth the statute of limitations for an action on a demand note. It is from that judgment that appellant appeals.
 {¶ 14} In its first assignment of error, appellant asserts that the trial court applied the wrong statute of limitations to this action and thereby erred in dismissing appellant's case. Appellant contends that contrary to the court's judgment, this action was on cognovit notes and as such is controlled by the 15 year statute of limitations set forth in R.C. 2305.06. Appellee counters that the notes were demand notes with cognovit provisions and, as such, any action on the notes was controlled by the 10 year statute of limitations set forth in R.C.1306.16(B).
 {¶ 15} R.C. 2305.06 sets forth the general statute of limitations applicable to actions on contracts and reads: "Except as provided in sections 126.301 [126.30.1] and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued." The Supreme Court of Ohio has held that the statute of limitations applicable to actions on cognovit notes is the 15 year period set forth in R.C. 2305.06. See Alliance First Nat. Bank v. Spies (1953), 158 Ohio St. 499, paragraph two of the syllabus. A cognovit note is one which contains language that permits the holder of the note "`to obtain judgment without a trial of possible defenses which the signers of the notes might assert.'" Fogg v. Friesner (1988),55 Ohio App.3d 139, 140, quoting Hadden v. Rumsey Products, Inc.
(C.A. 2, 1952), 196 F.2d 92, 96. In Ohio, cognovit notes are invalid unless they contain the following language: "Warning — By signing this paper you give up your right to notice and court trial. If you do not pay on time a court judgment may be taken against you without your prior knowledge and the powers of a court can be used to collect from you regardless of any claims you may have against the creditor whether for returned goods, faulty goods, failure on his part to comply with the agreement, or any other cause." R.C. 2323.13(D). The notes at issue herein contain this warning. An obligor under a cognovit note, however, does not forfeit his right to assert the defense that the holder of the note's action is barred by the applicable statute of limitations. Alliance, supra at paragraph one of the syllabus.
 {¶ 16} In the present case, the notes at issue contain both cognovit and demand elements. As we have stated, the statute of limitations applicable to an action on a cognovit note is 15 years under the general statute of limitations applicable to contract actions. In contrast, the statute of limitations applicable to an action on a demand note is set forth in
 {¶ 17} R.C. 1303.16(B), which reads: "Except as provided in division (D) or (E) of this section, if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note shall be brought within six years after the date on which the demand for payment is made. If no demand for payment is made to the maker of a note payable on demand, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years." R.C. 1303.16(B) is clearly more specific than R.C. 2305.06. "In making the choice between two statutes of limitations applicable to the same conduct, it is settled law that: `A special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable.'" Love v. Port Clinton (1988), 37 Ohio St.3d 98,99, quoting Andrianos v. Community Traction Co. (1951),155 Ohio St. 47, paragraph one of the syllabus.
 {¶ 18} The statute of limitations set forth in R.C.1303.16(B) specifically applies to demand notes whereas the statute of limitations set forth in R.C. 2305.06 applies to contracts in general. Accordingly, we must conclude that the statute of limitations provided by R.C. 1303.16(B) is controlling in this case and the trial court did not err in so holding. The first assignment of error is not well-taken.
 {¶ 19} In its second assignment of error, appellant challenges the trial court's finding that appellant did not demand payment on the notes within ten years from appellees' last payment.
 {¶ 20} In concluding that appellant's action against appellees on the notes was barred by R.C. 1303.16(B), the trial court found that appellees had made their last payment on the notes through a credit for hauling services on October 31, 1988, and that appellant had not made a demand for payment within ten years of that date. The record supports this finding. Although appellees and representatives of appellant entered into discussions regarding the notes as early as 1997, the earliest evidence in the record that could arguably be construed as a demand for payment is the letter dated December 23, 1998, which suggests a payment schedule. R.C. 1303.01(B)(12) provides that the phrase "payable on demand," as used in R.C. 1303.16(B), has the same meaning as in R.C. 1303.07. That statute reads at paragraph (A): "A promise or order is `payable on demand' if it states that it is payable on demand or at sight or otherwise indicates that it is payable at the will of the holder, or if it does not state any time of payment." What constitutes a demand for payment is not, however, defined in the applicable statutes. Nor have we found any case law on the issue. In our view, the holder of a demand note must, at the very least, make an unambiguous oral or written request for payment by a certain date. Absent such a request, it would be impossible for a payor under a note which does note include a date for payment or a payment schedule to determine when he or she is in default. While the letters quoted above informed appellees of the total amount appellant claimed was due, and may have suggested a payment plan, they did not reveal the amounts due under each of the notes individually and did not make an unambiguous request for payment by a certain date. Phrases such as "we need to address this matter," "each year we are going farther in the wrong direction," and "please contact Al Lehmkuhl * * * to discuss this matter" cannot be seen as expressing a demand for payment.
 {¶ 21} We therefore conclude that the trial court's finding that appellant had not made a demand for payment within the statutory period was supported by clear and convincing evidence and the second assignment of error is not well-taken.
 {¶ 22} In its final assignment of error, appellant asserts that the trial court erred in failing to conclude that the parties had extended the time for payment through the express language of the notes.
 {¶ 23} It is well established that "issues (constitutional or otherwise) which are neither raised in nor reached by the lower court will not be passed upon by this court." State v. Geraldo
(1983), 13 Ohio App.3d 27, 28. Appellant did not raise this issue in the trial court and the trial court did not address it. Accordingly, we need not pass upon it herein and the third assignment of error is not well-taken.
 {¶ 24} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
Judgment Affirmed.
Knepper, J., Pietrykowski, J. and Lanzinger, J., Concur.